**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ARLENE MCCARTHY,**

                           **Plaintiff,**

**-vs-**                                        **Case No.  6:07-cv-863-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                           **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed for disability benefits on July 31, 2003. R. 63.  She alleged an onset of disability on December 31, 1999 due to diabetes, osteoarthritis, migraines, and obesity.  R. 23-25.  Plaintiff's

date of last insured in June 30, 2004 ®. 70), although the ALJ represented to Plaintiff at the hearing that the date was December 2004.  R. 297.  Her application was denied initially on April 28, 2003. R. 48. Plaintiff requested reconsideration on June 22, 2004, which was considered "timely"; the request was denied on May 2, 2005.  R. 43, 46.  Plaintiff requested a hearing, which was held on September 22, 2006, before Administrative Law Judge Robert Marcinkowski (hereinafter referred to as "ALJ").  R.295.  In a decision dated October 22, 2006, the ALJ found Plaintiff not disabled as defined under the Act through June 2004.  R. 22.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 7.  The Appeals Council denied Plaintiff's request on April 13, 2007.  R. 4. Plaintiff timely filed this action for judicial review on May 22, 2007.  Doc. No. 1.

### B.      Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of diabetes, arthritis, migraines, and obesity.  R. 23-25.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from diabetes, osteoarthritis in her left knee, and chronic headaches, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 17.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work, as she could lift ten pounds and sit six hours in an eight-hour workday.  R. 20, 21.  In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision.  R. 19.  Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work.  R. 20.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R.

Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform various jobs within this description. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of last insured. R. 21.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. Second, she claims the ALJ erred by finding she had the RFC to perform sedentary work, contrary to her treating doctor's statements. Third, she asserts that the ALJ erred by not obtaining her complete medical records for the relevant period. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of

the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

A.      **Developing the record**

Plaintiff argues the ALJ committed reversible error by failing to fully develop the medical record, especially since Plaintiff was unrepresented at hearing. The Commissioner contends that there is evidence of record that shows Plaintiff made the ALJ aware of these records or that it was "patently obvious" from the record that additional medical evidence existed.

The relevant medical records in the court record begin with Plaintiff's May 27, 1999 treatment by Dr. Connie Bristow of Physicians Associates. R.141.  Plaintiff gave a ten year history of diabetes, sometimes out of control and on that day her blood sugar was over 300; the night before was over 400. R.139, 141.  At that time, in June 1999, Plaintiff's blood sugar levels continued to be in the high 300's to 400's.  R.138. She was diagnosed with Type II diabetes, poorly controlled. R.137. On June 21, 1999, Dr. Khan diagnosed Plaintiff with uncontrolled diabetes, improved and a skin lesion, probably dermatophyte. R.136. When Plaintiff returned to see Dr. Black in June 2000, her blood sugar was still in the low 300's and she complained of being tired. R.131-33. By February 2002, when Plaintiff saw Dr. Black again, he diagnosed her with type II diabetes mellitus, osteoarthritis and neck pain. R.129. In May 2002, Dr. Black changed Plaintiff's medication; he noted Plaintiff had developed some pain in the back side of her heel, that he diagnosed as Achilles tendinitis. R.126-27.

Beginning in June 2002, Plaintiff began complaining of right-side headaches occurring almost daily; but her blood sugar levels were below 200.  R.124-25.  She described them as starting as pressure and then becoming "a severe throbbing pain"; Dr. Black diagnosed the headaches as temporal arteritis; blood sugars averaged 170-190. R.124. In September 2002, Plaintiff described to Dr. Black her horrible headaches on the right parietal side that last all day, and medication did nothing to relieve the pain; Dr. Black diagnosed headaches, etiology undetermined, possible occipital neuralgia secondary to her diabetes, possible degenerative joint disease cervical spine with pinched nerve with neuralgia, possible migraine.  R.123.

On December 4, 2002 Plaintiff began treatment with Dr. Menkin for headaches. R.164. Plaintiff gave a one to two year history of headaches uniformly localized at the right temple area and characterized as a stabbing pain with throbbing features, radiating downward toward her right jaw.

R.164.  She described that in the last year it had been constant and unrelenting and while generally progressive, essentially unvaried. R.164. It was not made worse by activity or helped by rest or medication.  R.164. Dr. Menckin diagnosis was cephalgia. R.165.  Plaintiff returned to Dr. Menckin for headaches on January 13, 2003, February 10, 2003, and April 16, 2003;  flexeril and zanaflex did not provide relief.  R.161-63.

On April 21, 2003 Plaintiff returned to Dr. Black's office and saw Dr. Vu, who diagnosed Plaintiff with headaches, type II diabetes, uncontrolled, hypertension and hyperlipidemia.  R.118. Over the relevant time period, Plaintiff also had problems of right heel pain (R.160) and was fitted for a fracture boot (R.158); a lump behind her right ear from lymphadenitis (R.122); bilateral knee pain with a partial tear or sprain of the posterior cruciate ligament (R.119, 150-54, 142-48).  The Physician Associates records end on May 24, 2003.  R. 116 (received on March 5, 2004) and were not updated. Plaintiff's date of last insured is June 30, 2004.  R. 70.

On March 29, 2004, Dr. Alex Perdomo performed a consultative examination of Plaintiff. R.168.  Dr. Perdomo diagnosed Plaintiff with history of chronic left knee pain and mild osteoarthritis; history of trigeminal neuralgia with chronic headaches, poorly controlled diabetes, and obesity. R. 168.

On April 5, 2005 Plaintiff began treatment with a neurologist, Dr. Friedman, for her daily headaches, chronic numbness and tingling involving the left arm, sometimes painful, decreased sensation in her left leg, and chronic intermittent low back pain as well.  R.226.  An April 11, 2005 MRI of Plaintiff's back showed mild mild degenerative disc disease at C5-6 with mild central canal stenosis and minimal foraminal narrowing at C6-7 level[1].  R. 239-40. The MRI of Plaintiff's brain

---

[1]A subsequent MRI from February 2006 similarly showed cervical spondylosis with central to left paracentral disc protrusion in the C4-5 level and central to right lateral disc protrusion in the C5-6 levels with effacement of the ventral thecal sac, minor impression on the cord and right lateral recess stenosis at the C5-6 level. R.231.

showed abnormal hypointense signal involving the tip of the odontoid process.  R.237.  On May 3,

2005, Dr. Friedman diagnosed Plaintiff with chronic daily headaches and left hemibody paresthesias

with evidence of patchy sensory loss. R. 224-25.

Dr. Friedman's diagnosis on June 14, 2005 was chronic daily headaches, left arm sensory loss

associated with paresthesias, suggestive of a C5 radiculopathic process, and nonspecific sensory loss

involving both lower legs with a history of left leg paresthesias, possibly related to a lower lumbar

radiculopathy. R. 222.  Dr. Friedman's subsequent records from June 2005 to February 2006 show

Plaintiff was treated for chronic daily headaches, peripheral sensory neuropathy and left arm sensory

loss, suggestive of C5 radiculopathic process.  R. 205, 209, 211, 216, 218. Plaintiff had decreased

pinprick sensation in both feet up to the mid calf regions as well as in the left C5 dermatomal

distribution. R. 216.

Subsequently, on October 20, 2005 an MRI of Plaintiff's brain showed "punctate subcortical

and periventricular white matter foci of increased FLAIR and T2 signal at the level of corona radiata.

These are nonspecific but can be associated with vascular migraine syndromes." R.233.  Dr. Alatriste

did not begin treating Plaintiff until April 2006, when he diagnosed Plaintiff with peripheral

neuropathy, *i.e.*, proximal left arm pain associated with weakness and sensory loss, chronic daily

headaches, and clinical evidence of a peripheral sensory polyneuropathy involving all four extremities.

R.203-04, 181, 192, 201, 203.

The Commissioner argues that, although the ALJ was required to develop the Plaintiff's

medical history for the twelve months prior to her application date, the ALJ was "in no way bound"

to develop the medical records for the period after the filing date. Doc. No. 11 at 10 (citing *Ellison v.*

*Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)).  In addition, he had other medical records from the

Orlando Orthopedic Center, Neurological Services of Orlando, Magruder Eye Institute, and the Jewett

Orthopaedic Clinic, and Physician Associates which detailed some of Plaintiff's medical conditions

and treatment during the relevant period.  R. 116-60, 166, 201-43, 284-91.  The Commissioner also

points to the CE from March 2004 that Plaintiff could perform sedentary work, arguing "there was no

apparent reason for the ALJ to supplement the record."  Doc. No. 11 at 11.  The Commissioner puts

the burden on Plaintiff – "although Plaintiff could have easily appended this allegedly important

medical evidence to her brief . . . but has provided no proof that it is material or relevant."  Doc. No.

11 at 11.

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438

(11th Cir. 1988).  Where an unrepresented claimant has waived the right to retained counsel, the ALJ's

obligation to develop a full and fair record rises to a special duty.  *See Graham v. Apfel*, 129 F.3d 1420

(11th Cir. 1997).  Plaintiff argues that the evidence showed Plaintiff treated with Physician Associates

for the time period from 1999 to 2006, which included her treatment for diabetes mellitus and its

symptoms during the relevant time period; yet, the ALJ made no effort to secure the highly relevant

medical records for the time period of May 2003 to April 2006.

The Court agrees that, taken as a whole, the gap in the records from the Physician Associates'

records from May 2003 (*see* R. 2) to June 2004 (date of last insured) is particularly problematic, given

Plaintiff's complaints of escalating daily debilitating headaches and neuropathy related to diabetes.

There is ample evidence that Plaintiff was experiencing right-side headaches occurring almost daily

beginning in June 2002.  R.124-25.  However, under this particular set of facts and circumstances of

this case, it is particularly difficult for the Court to determine the severity and debilitating effect of the

headaches prior to the date of last insured, June 2004, which is a key issue in this case.  Other medical records entered into evidence show that Plaintiff treated with Physician Associates (Drs. Bristow, Black, and Vu) for her diabetes from 1999 to May 2003.  R. 2, 116-141.  The Physicians Associates records suddenly stop at that point even though Plaintiff's hearing was not until September 27, 2006 (having been requested in June 2005).  The medical records also show that Plaintiff did not begin treatment with Dr. Alatriste until April 2006 for her diabetes. R.192.  Proof that Plaintiff continued to be treated by Physicians Associates (and the records do exist) between May 2003 and April 2006 are the records from Orlando Orthopedics, which were carbon copied to Physicians Associates. R.141-52.

Not only did the ALJ fail to obtain from Physician Associates records for May 2003 to June 2004 (or thereafter), he obliquely cites the purported lack of medical treatment for the time period in discounting her credibility[2]:

> During the [March 24, 2004 consultative] examination, she told Dr. Perdomo that she had received treatment in the past for headache pain, but had not followed up due to lack of finances and insurance.  The claimant's allegation of lack of finances and insurance is not credible as her husband was working at the time.  Also, there is no indication that the claimant ever sought emergency room treatment for headaches.  If her pain were as severe as alleged, she would certainly have sought some kind of medical treatment.

R. 19.  The ALJ erred in failing to obtain the Physician Associates medical records, particularly for 2003 to 2004, and out of an abundance of caution, he should have obtained the records through 2006.  He also erred in relying on the lack of records in discounting Plaintiff's credibility.  Accordingly, the ALJ's decision was not properly based.

---

[2]The ALJ also cited Plaintiff's active involvement with the Boy Scouts in discounting her complaints of debilitating headaches.  R. 19.  It is clear from the record that Plaintiff's involvement with the scouts ceased prior to April 2004.  R. 98, 103.

## B.     RFC and the treating physician's opinion

Plaintiff claims that the ALJ should not have found her able to perform a full range of sedentary work in light of limitations assigned by Dr. Alatriste, M.D.  The Commissioner contends the ALJ was not obligated to give the July 2006 opinion of Anthony Alatriste, M.D. controlling weight.  R. 177-80.  Plaintiff contends that ALJ erred in not giving the retrospective opinion of plaintiff's treating physician "significant weight" and rejecting the opinion because he did not begin to treat Plaintiff until after the date of last insured. R.19.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ found plaintiff had the residual functional capacity to lift no more than 20 pounds, stand/walk a total of 4 out of 8 hours and sit a total of 6 out of 8 hours. R.19. However, Plaintiff's treating physician Dr. Alatriste opined Plaintiff could lift less than 10 pounds occasionally and sit less

-10-

than one hour per day. R.179.  The ALJ rejected Dr. Alatriste's opinion because he "did not begin treating the claimant until 2006, and his assessment is two years past the date she was last insured for disability purposes [June 30, 2004]."  R. 19 (referring to R. 70, 192).

At what appears to have been the request of the Office of Hearings and Appeals, Dr. Alastriste completed a residual function capacity evaluation on July 26, 2006 in which he opined that Plaintiff could lift less than 10 pounds occasionally and could sit less than 1 hour a day. R.177-80.  Dr. Alatriste also sent a cover letter with the physical capacity evaluation which stated "Mrs. McCarthy is currently totally disabled requiring further medical treatment for peripheral neuropathy, diabetes mellitus, chronic pain and trigeminal neuropathy."  R. 177.

The Commissioner contends that Dr. Alatriste's July 2006 opinion is not relevant to Plaintiff's condition of June 2004 because he stated in the cover letter that Plaintiff was "currently" disabled. R. 177.  The Commissioner also argues the ALJ did not have to put much stock in Dr. Alatriste's "check a box" form (R. 178-80), which indicated Plaintiff's functional capacities were below the sedentary level of exertion, thus excluding her from any competitive work.  Doc. No. 11 at 8 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best") and *Spencer o/b/o Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting an opinion from a non-examining physician who merely checked boxes on a form without providing any explanation of his conclusions)).  The Court points out that by all appearances, this is the form that the SSA, Office of Hearings and Appeals *sent to him.*  Dr. Alatriste attached his treatment notes for the period April to July 2006, so the notes certainly supplemented the SSA form.  *See* Doc. No. 177- 200.

-11-

The Commissioner argues the Plaintiff's cited case of *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir. 1983)[3] is easily distinguishable because even though the physician's opinion was rendered two years after the claimant's insured status expired, the treating source had expressly indicated that the disability itself began prior to the date last insured and the opinion should have been considered by the ALJ. The Commissioner contends this case is different because Dr. Alatriste specifically stated in his cover letter that Plaintiff was "currently" disabled and he did not, expressly or impliedly, indicate that his opinion was retrospective to her condition prior to her date last insured. R. 177.

As explained above, without the medical records from Physician Associates from May 2003 to June 2004 (and thereafter if available), the ALJ's decision is not based on substantial evidence. Therefore, the importance of Dr. Alatriste's retrospective opinion of Plaintiff's limitations cannot be put into context. The case will be remanded with directions for the ALJ to consider Dr. Alatriste's opinion (R. 177-80) and assigned limitations in light of the records received from Physician Associates that pre-date his opinion.

**C.      Application of the grids**

Plaintiff claims that because she suffered from nonexertional limitations, the ALJ was precluded from using the grids and was required to elicit testimony from a vocational expert. The Commissioner contends that VE testimony was not required. The Commissioner contends that VE testimony was not required because the ALJ did not find Plaintiff had exertional limitations which might erode the sedentary occupational base. R. 18. The Commissioner argues that it is not enough for Plaintiff to argue that her symptoms and diagnoses made VE testimony necessary, but must present

---

[3]*Boyd* has been superseded by statute on other grounds. *See Elam v. Railroad Retirement Bd.*, 921 F.2d 1210 (11th Cir. 1991).

-12-

functional limitations resulting from her condition that prevent her from performing work.  Doc. No. 11 at 7.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy.  *Foote*, 67 F.3d at 1558.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the "grids."  *Foote*, 67 F.3d at 1558.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a VE.  *Foote*, 67 F.3d at 1559.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

The ALJ found Plaintiff could not perform her past relevant work (R.20) and that she suffered from significant nonexertional impairments of chronic headaches, etc. which caused "stabbing pain with throbbing features"; bilateral knee pain, consistent with degenerative joint disease; pain from degenerative joint disease cervical spine with pinched nerve; and neuropathy from type II diabetes mellitus. R. 119, 122, 123, 157, 164. Thus, Plaintiff contends, the testimony of a vocational expert was necessary to properly assess Plaintiff's ability to work given her symptoms and diagnosis.

As explained in detail above, without the missing records from Physician Associates, the Court cannot determine the severity of Plaintiff's subjective complaints.  The case will be remanded with directions for the ALJ to consider Plaintiff's subjective complaints for the relevant period prior to the date of last insured in light of the records received from Physician Associates.

### CONCLUSION

For the foregoing reasons, the decision of the Commissioner is inconsistent with the requirements of law and is not supported by substantial evidence.  Accordingly, it is **ORDERED** and **ADJUDGED** that the Commissioner's decision is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); the ALJ is **DIRECTED** to obtain the Physician Associates records from May 2003 at least though 2006 if available; to consider Dr. Alatriste's opinion (R. 177-80) and assigned limitations in light of the records received from Physician Associates that pre-date his opinion; and to consider Plaintiff's subjective complaints for the relevant period prior to the date of last insured in light of the records received from Physician Associates and in light of the rulings made herein.  The Clerk of Court is **DIRECTED**  to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 1, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record